## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
KEVIN JACKSON,                    :
  plaintiff,                      :
                                  :
      v.                          :  case no. 3:20cv932(AVC)
                                  :
UCONN HEALTH MANAGEMENT, et al.,  :
  defendants.                     :
```

### <u>INITIAL REVIEW ORDER</u>

Jackson, Kevin Jackson, is currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut (hereinafter "MacDougall-Walker"). He has filed a supplemental amended complaint pursuant to 42 U.S.C. § 1983, to add Advanced Practice Registered Nurse ("APRN") Jean Caplan, nurse Rose and the Department of Correction as defendants and to re-name UCONN Health Management, Drs. Gerald Valletta and Ricardo Ruiz and APRN Viktoriya Stork as defendants.  <u>See</u> Supplemental Amended Complaint, ECF No. 9.  For the reasons set forth below, the court dismisses the supplemental amended complaint in part.

### <u>FACTS</u>

The supplemental amended complaint and the exhibits filed in support thereof reveal the following facts.

At some point during his confinement at MacDougall-Walker in 2016, Jackson began to experience excruciating pain in his

eardrums, as well as tinnitus[1] all day long.  He suspected that the cause of the pain and tinnitus was listening to music on an electronic device and using an old-fashioned typewriter that would only type in bold format.  Jackson contends that the sound made by the typewriter keys was twice as loud when typing in bold format.  The sounds from televisions, radios and telephones intensified the pain in his eardrums.

Jackson sought treatment from Dr. Naqvi, a physician at MacDougall-Walker.  Naqvi prescribed drops for Jackson's ears. The ear drops were not effective in relieving his symptoms.

As of August 25, 2016, Jackson was confined at Cheshire Correctional Institution (hereinafter "Cheshire").  Jackson sought treatment from Dr. Ruiz for the pain in his eardrums and tinnitus.  On August 25, 2016, Ruiz examined Jackson's ears and recommended that he be evaluated by an audiologist even though Jackson explained that he had no trouble with his hearing.  At some point prior to the end of 2016, prison officials at Cheshire transferred Jackson to Garner Correctional Institution (hereinafter "Garner").

Dr. Valletta provided care to Jackson at Garner.  On June 30, 2017, an audiologist at the University of Connecticut Health

---

[1] Tinnitus is defined as ringing or other noises in one or both ears. The noise is not caused by an external sound, and others typically cannot hear it.  See https://www.mayoclinic.org/diseases-conditions/tinnitus//

Center evaluated Jackson's hearing.  In her notes documenting the evaluation, the audiologist indicated that Jackson had complained that very soft sounds were loud and was uncooperative, no reliable responses could be obtained, his middle ear function was normal and "DPAOES suggested essentially normal hearing."  She recommended no further audiology follow-up, but suggested that if Jackson continued to experience ear pain that an appointment with an ear, nose and throat physician ("ENT") who specialized in tinnitus and ear pain be considered.

On July 5, 2017, Valletta met with Jackson and recommended that he be scheduled to see an ENT.  Valletta did not submit a request to the utilization review committee, seeking an ENT referral for Jackson.

Six months later, prison officials at Garner transferred Jackson back to Cheshire.  He submitted a request to be seen by Ruiz to address his ear pain and a severe sinus condition that caused congestion, a runny nose, a blocked nasal passage and shortness of breath.  A nurse placed Jackson's name on a list to see Ruiz.  After waiting to be seen for six months, Ruiz called Jackson for an appointment.  Ruiz informed Jackson during an appointment that he only had time for one medical complaint and treated Jackson for a skin rash.  Ruiz ignored Jackson's ear

---

symptoms-causes/syc-20350156 (last visited June 30, 2021).

pain and sinus condition and did not schedule him to be
evaluated by an ENT specialist.

In January 2019, prison officials at Cheshire transferred
Jackson to MacDougall-Walker.  In October 2019, Naqvi met with
Jackson and noted his symptoms of ear pain and sinus congestion,
as well as the recommendation by the audiologist that he be seen
by an ENT.  Naqvi scheduled Jackson to be seen by an ENT
specialist at University of Connecticut Health Center.
Jackson's appointment was delayed because of the COVID 19
pandemic.

Jackson met with APRN Stork on several occasions after
October 2019 and informed her that the electronic devices used
by other inmates were loud and caused him to experience severe
ear pain.  Jackson requested that he be placed in a single cell
until his ENT appointment.  Jackson also complained to an
administrator about his need for a single cell.  The
administrator suggested that he ask APRN Stork for a temporary
single cell pass.  APRN Stork refused to enter an order that
Jackson be housed in a single cell.

On August 26, 2020, medical providers at Cheshire
transported Jackson to UCONN for his appointment with an ENT
specialist.  The specialist diagnosed Jackson as suffering from
"hyperacusis" ear pain and sinusitis and recommended that he

4

avoid loud noises and use earbuds.  The specialist also prescribed two nasal treatments and mentioned that Jackson had developed asthma.  Jackson's use of ear buds for two months completely alleviated his ear pain.

On September 2, 2020, APRN Caplan entered orders that Jackson undergo breathing treatments.  She entered the orders as a KOP (keep on person) prescription.  No one provided Jackson with the medication necessary to undergo the breathing treatments in his cell.  He filed a medical grievance.  Nurse Rose instructed Jackson to fill out a refill form and she would re-enter the orders for the breathing treatments.  Two weeks after filling out the refill form, Jackson had still not received the medication necessary to undergo the breathing treatments in his cell.  He filed another grievance, but nurse Rose did not reply to it.

On December 22, 2020, Jackson learned from another medical provider that APRN Caplan had erroneously entered the breathing treatment order as a KOP prescription and that he must go to the medical department to receive the breathing treatments.  A correctional officer subsequently called the medical department and a provider indicated that there was no order for a breathing treatment in Jackson's medical records.  Jackson confronted APRN Caplan about not receiving the breathing treatments and she

indicated that she had ordered them.  As of December 30, 2020, Jackson had not been called to the medical department to receive the breathing treatments.

## STANDARD

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  Id.  This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).

It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants). However, notwithstanding this liberal interpretation, a pro se complaint will not survive dismissal unless the factual allegations meet the plausibility standard. See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015).

## DISCUSSION

Jackson contends that Drs. Valletta and Ruiz, APRNs Stork and Caplan and nurse Rose subjected him to deliberate indifference to medical needs or his health, during his

confinement at MacDougall-Walker, Cheshire and Garner from
August 2016 to December 2020, and that nurse Rose interfered
with his right to file medical grievances and to have the
grievances processed, during his confinement at MacDougall-
Walker, from September to December 2020.  He seeks monetary
damages and declaratory and injunctive relief related to
Department of Correction grievance procedures.

## I.  **Declaratory Relief**

Jackson seeks a declaratory judgment that the defendants
were deliberately indifferent to his medical needs in violation
of the Eighth Amendment.  Under the doctrine of Ex parte Young,
209 U.S. 123 (1908), a plaintiff may seek prospective injunctive
and declaratory relief to address an ongoing or continuing
violation of federal law or a threat of a violation of federal
law in the future.  See In re Deposit Ins. Agency, 482 F.3d 612,
618 (2d Cir. 2007); Ward v. Thomas, 207 F.3d 114, 120 (2d Cir.
2000).  In determining whether Ex parte Young applies, "a court
need only conduct a straightforward inquiry into whether the
complaint alleges an ongoing violation of federal law and seeks
relief properly characterized as prospective."  Verizon Md.,
Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)
(internal quotation marks and citation omitted).

Jackson's request for a declaration that the defendants

violated his federal constitutional rights in the past is barred by the Eleventh Amendment. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*... to claims for retrospective relief") (citations omitted). Furthermore, if Jackson were to prevail on his Eighth Amendment claims, the court necessarily would determine that the defendants had violated his constitutional rights. Thus, a separate award of declaratory relief is unnecessary. Accordingly, the request for declaratory relief is dismissed. See 28 U.S.C. § 1915A(b)(1).

## II.  **Department of Correction and UCONN Health Management**

Jackson describes UCONN Health Management and the Department of Correction as entities that provided health care to inmates at Garner, MacDougall-Walker and Cheshire. Am. Compl. at 2-3. To state a claim under section 1983, Jackson must allege facts showing that the defendant, a person acting under color of state, law deprived him of a federally protected right. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982). The Supreme Court has held that a state agency is not a person within the meaning of section 1983. See Will v. Michigan

Dep't of State Police, 491 U.S. 58, 71 (1989) (and "governmental entities," like state agencies, "that are considered arms of the State," are not persons within meaning of 42 U.S.C. § 1983) (internal quotation marks and citation omitted).

University of Connecticut Health Management, is "a division of a state agency, the University of Connecticut Health Center." Jolly v. Correctional Managed Health Care, Case No. 3:04cv1582(RNC), 2009 WL 233667, at *3 (D. Conn. Jan. 30, 2009). As such, it is not a person within the meaning of § 1983.  Id.; see also Gaby v. Board of Trustees of Community Technical Colleges, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state universities and their boards of trustees are not persons within the meaning of section 1983); Kaminski v. Oniyuke, No. 3:19-CV-58 (SRU), 2019 WL 1877075, at *2 (D. Conn. Apr. 26, 2019) ("The UConn Health Center is not a person subject to liability under section 1983.")(citations omitted).

The Department of Correction is a department within the executive branch of the State of Connecticut.  See Conn. Gen. Stat. 4-38c ("There shall be within the executive branch of state government the following departments ... Department of Correction...."); Vaden v. Connecticut, 557 F. Supp. 2d 279, 288 (D. Conn. 2008) ("Department of Correction is an arm of the

State of Connecticut") (citation omitted).  As a governmental unit, the Department of Correction is not a person subject to liability under section 1983.  See Williams v. Osborn Med. Dep't, No. 3:20-CV-01474 (JAM), 2021 WL 151044, at *2 (D. Conn. Jan. 18, 2021) ("The DOC, as an arm of the state, is not a 'person' for purposes of section 1983 and therefore cannot be held liable as a defendant in an action raised under section 1983.") (collecting cases).  All claims asserted under section 1983 against UCONN Health Management and the Department of Correction lack an arguable legal basis and are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## III. **Deliberate Indifference to Serious Medical Needs Drs. Ruiz and Valletta and APRN Caplan**

The Eighth Amendment prohibits "deliberate indifference" by medical providers to an inmate's "serious medical needs" as well as an inmate's "needs for mental health care."  Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976) and Langley v. Coughlin, 888 F.2d 252, 254 (2d Cir. 1989)).  To state a claim for deliberate indifference to a serious medical need, two requirements must be met.  Under the objective prong, the inmate's medical need or condition must be "a serious one."  Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (citations

omitted).  In determining whether a condition is serious, the court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second prong is subjective.  Under this prong, a prison official must have been actually aware that his or her actions or inactions would cause a substantial risk of serious harm to the inmate.  See Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).  Mere negligent conduct does not constitute deliberate indifference.  Id. at 280 (reckless indifference "entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.");  Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Jackson alleges that in 2016, he began to experience tinnitus, severe ear pain and a sensitivity to any loud noise. From 2016 through the end of August 2020, he continued to suffer from severe pain and tinnitus in both ears, during his confinement at Cheshire, Garner and MacDougall-Walker.  The pain

made it difficult for him to engage in daily activities and to be housed with inmates who used loud electronic devices.  The court concludes that Jackson has plausibly alleged that over a four-year period, he has suffered from a medical condition that caused him to experience severe pain in his ears and that interfered with his daily activities.

In 2018, during his confinement at Cheshire, Jackson complained about a sinus condition that caused congestion, a runny nose, a blocked nasal passage, shortness of breath and difficulty breathing and sleeping.  He continued to suffer from these conditions until he signed the amended complaint in late December 2020.  The court concludes that Jackson has plausibly alleged that over a three-year period, he suffered from a potentially serious sinus condition that caused him to have trouble breathing and sleeping.

Jackson alleges that in August 2016, Dr. Ruiz submitted a request that he be evaluated by an audiologist.  Jackson did not think that an audiologist was the proper specialist to evaluate his symptoms of ear pain and tinnitus.  Jackson's contention that he should have been referred to a different specialist constitutes a difference of opinion as to appropriate medical treatment, which is not actionable under the Eighth Amendment. See Chance, 143 F.3d at 703 (holding that a "mere disagreement

13

over the proper treatment" is not actionable under § 1983);
Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d
303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications,
diagnostic techniques (e.g., the need for X-rays), forms of
treatment, or the need for specialists or the timing of their
intervention, are not adequate grounds for a Section 1983 claim.
These issues implicate medical judgments and, at worst,
negligence amounting to medical malpractice, but not the Eighth
Amendment.") (citing Estelle, 429 U.S. at 107).  Accordingly,
the claim asserted against Dr. Ruiz regarding his 2016 referral
of Jackson for an evaluation by an audiologist is dismissed
under 28 U.S.C. § 1915A(b)(1).

In June 2017, after Jackson's transfer to Garner, an
audiologist examined him and recommended that he be evaluated by
an ENT if his ear pain and tinnitus continued. Dr. Valletta
failed to facilitate the scheduling of an appointment with an
ENT, despite his awareness of the recommendation by the
audiologist and Jackson's continued ear pain.  During Jackson's
confinement at Cheshire from January to December 2018, Dr. Ruiz
refused to evaluate or treat Jackson for his complaints of ear
pain and sinus congestion.

The court concludes that Jackson has asserted sufficient
facts to state an Eighth Amendment claim that during his

14

confinement at Garner in 2017, Dr. Valletta was aware of his
potentially serious medical condition and symptoms and failed or
refused to take steps to schedule an appointment with a
specialist pursuant to the recommendation of the audiologist.
He has also stated an Eighth Amendment claim that during his
confinement at Cheshire in 2018, Dr. Ruiz was aware of Jackon's
potentially serious medical conditions and symptoms and refused
to evaluate, assess or treat him and failed to make arrangements
for him to be examined by a specialist.  These Eighth Amendment
deliberate indifference to medical needs claims will proceed
against Ruiz and Valletta, in their individual capacities.

Jackson alleges that after his appointment with an ENT
specialist, APRN Caplan entered orders that breathing treatments
be administered to him in accordance with the recommendation of
the ENT specialist.  He alleges that he wrote to ARPN Caplan
about not receiving the breathing treatments during the three-
month period after she entered the orders, but she took no steps
to investigate or correct the situation.  She simply stated that
she had entered the orders.  Jackson had trouble breathing and
sleeping during the three-month period.  The court will permit
this Eighth Amendment deliberate indifference claim to proceed
against APRN Caplan, in her individual capacity, for further
development of the record.

IV.  **Deliberate Indifference to Health - APRN Stork**

     To state a claim of deliberate indifference to health or
safety due to unconstitutional conditions of confinement, an
inmate must demonstrate both an objective and a subjective
element.  To meet the objective element, the inmate must allege
that he was incarcerated under a condition or a combination of
conditions that resulted in a "sufficiently serious" deprivation
of a life necessity or a "human need[]" or posed "a substantial
risk of serious harm" to his health or safety.  Farmer v.
Brennan, 511 U.S. 825, 834 (1994); Rhodes v. Chapman, 452 U.S.
337, 347 (1981).  To meet the subjective element, an inmate must
allege that the defendants possessed culpable intent; that is,
the officials knew that he faced a substantial risk to his
health or safety and disregarded that risk by failing to take
corrective action.  See Farmer, 511 U.S. at 834, 837.

     During Jackson's confinement at MacDougall-Walker, he made
APRN Stork aware of his severe ear pain and the fact that loud
music and noise from electronic devices used by other inmates
exacerbated his painful condition.  APRN Stork refused to enter
an order or recommend that Jackson be temporarily housed in a
single cell away from other inmates and their electronic
devices, from October 2019 until August 2020.

     The court concludes that Jackson's allegation regarding

16

APRN Stork's refusal to enter an order or make a recommendation
that Jackson be placed in a single cell, after she became aware
that his confinement in a cell with another inmate exacerbated
his severe ear pain, is sufficient to state a deliberate
indifference to health claim.  The court will permit this Eighth
Amendment claim to proceed against APRN Stork, in her individual
capacity, for further development of the record.

**V.   Grievances/Deliberate Indifference Health – Nurse Rose**

Jackson claims that he filed two grievances after APRN
Caplan entered orders that he be administered breathing
treatments in September 2020.  Nurse Rose responded to the first
grievance, but did not respond to the second grievance.  He
contends that Rose has exhibited a pattern of throwing inmate
grievances away instead of responding to them.  Jackson seeks an
order directing the Department of Correction to use grievance
forms with a carbon page, so that inmates may keep a carbon copy
of every grievance that they file before placing the grievance
in the administrative remedies box.

The second circuit has held that neither state directives
nor "state statutes ... create federally protected due process
entitlements to specific state-mandated procedures."  Holcomb
v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003).  Thus, allegations
that a prison official violated or restricted a prisoner's

access to the procedures set forth in a state's administrative remedy program, applicable to prisoner grievances, do not state a claim for a violation of an inmate's constitutional rights. See Riddick v. Semple, 731 F. App'x 11, 13 (2d Cir. 2018) (affirming district court's dismissal of Fourteenth Amendment claim that prison officials restricted inmate's use of grievance procedures because "neither state policies nor "'state statutes ... create federally protected due process entitlements to specific state-mandated procedures.'") (summary order)(quoting Holcomb, 337 F.3d at 224); Garcia v. Semple, et al., No. 3:18-cv-1226 (SRU), 2019 WL 5597771, at *15 (D. Conn. Oct. 30, 2019) (finding that "allegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights," and collecting cases). Nor does a prisoner "have a due process right to a thorough investigation of grievances." Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (citing Torres v. Mazzuca, 246 F. Supp. 2d 334, 341–42 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a

18

protected liberty interest.")).

Jackson's allegation that at some point after September 2, 2020, Rose neglected to process one of his medical grievances in accordance with State of Connecticut Department of Correction Administrative Directive 8.9, does not rise to the level of a due process violation under the Fourteenth Amendment.  See, e.gl., Brown v. Graham, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.").  The Fourteenth Amendment due process claim related to Rose's processing of his medical grievance and the request for injunctive relief associated with this claim is dismissed.  See 28 U.S.C. § 1915A(b)(1).

Jackson also contends that Rose's failure to respond to his grievance that other medical providers had not administered breathing treatments to him during the period from September to December 2020, constituted deliberate indifference to his serious sinus condition.  The court will permit this Eighth Amendment deliberate indifference claim to proceed against Rose, in her individual capacity, for further development of the record.

**ORDERS**

The court enters the following orders:

19

(1)   The request for declaratory relief from all
defendants, the Eighth Amendment claim asserted against UCONN
Health Management and the Department of Correction, the Eighth
Amendment claim asserted against Dr. Ruiz regarding his referral
of Jackson for an evaluation by an audiologist in 2016, the
Fourteenth Amendment claim related to nurse Rose's failure to
process the medical grievances and the request for injunctive
relief associated with this Fourteenth Amendment claim are
**DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  Thus, all claims
against the Department of Correction and UCONN Health Management
have been **DISMISSED.**

The Eighth Amendment deliberate indifference to medical
needs claims will proceed against Dr. Ruiz, Dr. Valletta, APRN
Caplan and nurse Rose, in their individual capacities, and the
Eighth Amendment deliberate indifference to health claim will
proceed against APRN Stork, in her individual capacity.

(2)   Within twenty-one (21) days of this order, the clerk
shall verify the current work addresses of: **Dr. Ricardo Ruiz,
Dr. Gerald Valletta, APRN Viktoriya Stork, APRN Jean Caplan and
Nurse Rose** and mail a copy of the supplemental complaint, ECF
No. 9, this order and a waiver of service of process request
packet to each defendant in his or her individual capacity, at
his or her confirmed address.  On the thirty-fifth (35th) day

20

after mailing, the clerk shall report to the court on the status of each request.  If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)  The defendants Ruiz, Valletta, Stork, Caplan and Rose, shall file a response to the supplemental amended complaint, ECF No. 9, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them by Jackson.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include all additional defenses permitted by the federal rules.

(4)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

(5)  All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(6)  If Jackson changes his address at any time during the litigation of this case, local court rule 83.1(c)2 provides that

Jackson MUST notify the court.  Failure to do so can result in
the dismissal of the case.  Jackson must give notice of a new
address, even if he is incarcerated.  Jackson should write
PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to
just put the new address on a letter without indicating that it
is a new address.  If Jackson has more than one pending case, he
should indicate all case numbers in the notification of change
of address.  Jackson should also notify the defendants or the
attorney for the defendants of his new address.

(7)  Jackson shall utilize the Prisoner Efiling Program
when filing documents with the court.  Jackson is advised that
the program may be used only to file documents with the court.
Local court rule 5(f) provides that discovery requests are not
to be filed with the court.  Therefore, discovery requests must
be served on the defendants' counsel by regular mail.

(8)  The clerk shall immediately enter the District of
Connecticut Standing Order Re: Initial Discovery Disclosures
concerning cases initiated by self-represented inmates and shall
send a copy of the standing order to the parties.  The order
also can be found at http://ctd.uscourts.gov/district-
connecticut-public-standing-orders.

(9)  The clerk shall send a courtesy copy of the
supplemental amended complaint and exhibits and this order to

22

the Connecticut Attorney General and to the DOC Legal Affairs Unit.

It is so ordered this 7th day of July 2021, at Hartford, Connecticut.

```
                         _____/s/_____
                         Alfred V. Covello
                         United States District Judge
```