**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
KEVIN JACKSON,                  :
                                :
        Plaintiff,              :
                                :
                                :
v.                              :
                                :
UCONN HEALTH MANAGEMENT, GERALD :   Civil No. 3:20-cv-932 (AWT)
VALLETA, RICARDO RUIZ, VIKTORIYA:
STORK, JEAN CAPLAN, ROSE, and   :
DEPARTMENT OF CORRECTION,       :
                                :
        Defendants.             :
                                :
                                :
------------------------------ x
```

## RULING ON DEFENDANT STORK'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kevin Jackson brings claims against defendant Viktoriya Stork, APRN and six other defendants.[1] The sole claim against Defendant Stork at this stage in the case is the plaintiff's claim that from approximately January 2020 to August 2020 she refused to place the plaintiff in a temporary single cell in response to his complaint of severe ear pain. See Supp. Am. Compl. (ECF No. 9) ¶¶ 19-20. Stork has moved for summary judgment on this claim. For the reasons set forth below, her motion for summary judgment is being granted.

---

[1] The case was dismissed as to defendant UCONN Health Management and the Department of Correction in the Initial Review Order (ECF No. 15) on July 7, 2021.

-1-

## I.    FACTUAL BACKGROUND

On March 30, 2016, the plaintiff filled out an Inmate Request Form to "Medical" complaining of an "ear infection" that he claimed had been bothering him for over three weeks. L. Civ. R. 56(a)1 Statement, Exhibit B, Dept. of Corr. Grievance Records (ECF No. 39)("Exh. B") at 68. He further stated that "I also need a single cell so I'm not around noise that irritates my ear drums." Id. On April 11, 2016, the plaintiff filed a grievance asking for a single cell because he had an "ear problem from listening to loud music and now it damaged my eardrum and any noise hurts my ear drum bad." Exh. B at 62, 67.

The plaintiff was seen by Dr. Naqvi on April 17, 2016 in response to these requests, and Dr. Naqvi prescribed Nortriptyline for the ear pain. On April 25, 2016, the plaintiff filed another grievance, claiming that he had not gotten medication that he was told would be provided to him. On April 25, 2016, his grievance was returned to him with the notation: "You were seen by the MD for the issues noted in your AR on 4/17/16. Single cell status was not approved [at] that time. [Secondary] criteria must be met. Treated for ear issue. If another [  ] issue[], please address in sick call." Exh. B at 65. The plaintiff filled out an Inmate Grievance Appeal Form on May 2, 2016, and it was returned with a note that he "was seen by MD, was advised that he would not qualify or meet the

criteria for single cell." Exh. B at 69.

On August 25, 2016, Dr. Ruiz submitted a request for an audiology consult at UConn Health Center. This request was approved by the Utilization Review Committee on February 17, 2017.

On September 27, 2016 and October 13, 2016, the plaintiff filed requests for a Health Services Review, stating: "I requested to see the doctor about my ear problem that was ongoing for 6 months but the nurse said she is only giving me ear drops. I need a single cell which only the doctor can order. Also I need to go to UConn to have my ears evaluated." Exh. B at 85, 87. On October 21, 2016, the plaintiff received a response stating: "You were seen in sick call on 9/24/16 and told to [return to clinic] if problem persists. Please first address this informally on CN 9601." Exh. B at 87.

On June 30, 2017, the plaintiff was seen at UConn Health Center for an audiologist consultation. L. Civ. R. 56(a)1 Statement, Exhibit C, Dept. of Corr. Medical Records (ECF No. 40)("Exh. C") at 4. At the June 30, 2017 audiology consultation, the audiologist, Dr. Siddons, noted that the plaintiff was "uncooperative" and "no reliable responses could be obtained." Exh. C at 5. The plaintiff complained that "very soft sounds were loud." Exh. C at 4. An audiogram revealed "normal middle ear function" and "essentially normal hearing." Id. Dr. Siddons

-3-

determined that "no further audiology follow-up [was] needed,"
and he concluded that "if pain continues consider ENT
eval[uation]." Id.

On February 6, 2018, the plaintiff stated during a social
work screening that he had been asking to be placed in a single
cell. The plaintiff indicated a history of mental health issues
as his reason for seeking a single cell. Positive coping skills
were discussed with the plaintiff, but there was no suggestion
that he be transferred to a single cell.

Almost a year later, on February 3, 2019, the plaintiff
submitted a grievance requesting single cell status. The
plaintiff stated that there had been an incident during which
other inmates in his cell masturbated while he was sleeping. He
also stated that, on one occasion, an inmate was "staring at me
while I was sleeping." Exh. B at 12. The plaintiff complained
that he did not feel comfortable in his cell and was "paranoid
that someone may be lusting off of me in their mind." Id. He
stated that he "refuse[d] to sleep until I literally pass out."
Id. The plaintiff's request was denied on February 13, 2019. The
plaintiff appealed this decision on April 10, 2019. The
plaintiff stated that "I am losing sleep and cannot function
normally in a cell with other inmates. It is suitable to place
me in a single cell status due to my mental health being
affected by having a cell mate since it is causing me stress,

paranoia and loss of sleep which could cause me to pass out and I shouldn't have to deal with sexual harassment." Exh. B at 10. The appeal was denied because the Acting Warden's decision not to place the plaintiff on single cell status was deemed appropriate.

On April 29, 2019, the plaintiff filed another grievance stemming from an incident on March 13, 2019. Exh. B at 18. The plaintiff stated that he "refused housing and threatened to fight someone if I was put in a cell with someone." Id. As a result of this incident, the plaintiff was placed in restraints for twenty-four hours. The plaintiff complained that this was excessive force. On May 30, 2019, his grievance was rejected as untimely. The plaintiff appealed on May 31, 2019, and his appeal was denied.

On October 16, 2019, the plaintiff asked to be seen at prompt care. He was evaluated by Nurse Vilayvong, who noted that the plaintiff complained of "chronic sinus, ear, and skin issues." Exh. C at 8. The plaintiff asked to be seen by a medical provider, and Nurse Vilayvong added him to the provider sick call list.

On October 20, 2019, the plaintiff was seen by Dr. Naqvi. Dr. Naqvi noted that the plaintiff was experiencing  sinus issues and a backache. Dr. Naqvi ordered that the plaintiff's Lyrica dose be increased and concluded that the plaintiff needed

a referral to an ENT specialist. Dr. Naqvi followed up by submitting a request to the Utilization Review Committee for the plaintiff to see an ENT specialist at UConn Health Center. This request was approved on November 30, 2019.

On October 23, 2019, Nurse Stork entered a number of orders for follow-up testing for the plaintiff, including a complete blood count and audio differential, a comprehensive metabolic panel, thyroid stimulating hormone, a urinalysis, an electrocardiogram, Vitamin B12, Vitamin D25, folate, magnesium, a hemoglobin A1C, and a lipid panel. She also entered a "Chronic Care General Referral." Exh. C at 11. Nurse Stork entered the orders, but she did not see the plaintiff.

Nurse Stork first saw the plaintiff on January 24, 2020. This occurred at sick call. The plaintiff had "multiple complaints regarding his health," including suffering from chronic pain. Exh. C at 13. He stated he was experiencing pain because of "nerve damage to his left first index" and that it was "sharp" and "constant." Exh. C at 14. He also stated that he was experiencing pain in his "spinal cord" that was "sharp" and "constant." Id. He also reported a history of irritable bowel syndrome for 15 years after swallowing "some toxic chemicals" at the age of 15. Exh. C at 15. He complained of intermittent abdominal pain and cramping. He also reported a history of adrenal insufficiency, resulting in itching and a stinging

sensation on his skin.

During the evaluation of the plaintiff's "systems," ranging from eyes, to cardiac, to pulmonary, to skin, to gastrointestinal, to musculoskeletal, the following notes were made by Nurse Stork:

E/N/T: Complains of Decreased Hearing. Denies Earache, Ear Discharge, Nasal Congestion, Nosebleeds. [C]hronic left ea[r] problems

ENT appointment pending

Exh. C at 13.

The plaintiff had been prescribed Nortriptyline (Pamelor) 10 mg daily but claimed that he began experiencing itching immediately after the first dose, so he discontinued using it after that first dose. Nurse Stork had the plaintiff sign a refusal of treatment form to discontinue the Nortriptyline. Nurse Stork continued Lyrica 75 mg daily to manage the plaintiff's chronic pain. She ordered the Lyrica for three months only. She also ordered an abdominal x-ray to follow up on the plaintiff's complaints of abdominal pain. The plaintiff was given supplies for a hemoccult test, to check for the presence of blood in his stool. He was to follow up with Nurse Stork in three months or sooner if needed. Exh. C at 16.

On February 12, 2020, the plaintiff filed a grievance asking to be moved to a different housing unit because "I have issues with my [cell mate] and we do not get along." Exh. B at

40-41. The grievance was denied as moot on February 19, 2020 because the plaintiff had been moved to another housing unit. Exh. B at 40.

On February 19, 2020, the plaintiff filed another grievance asking to be placed in a single cell. IGP Number 137-25386 relates to this grievance. While the plaintiff had denied earache on January 24, 2020, in this grievance he stated "I need a single cell due to my ear problem which causes me pain from hearing other inmates electronics. My eardrum is damaged and is very sensitive to noise, especially electronics like TV's, CD players, boom box's, tablets, etc. May you have me put in a single cell until I can get my ear operation at UConn." Exh. B at 115. The grievance did not refer to Nurse Stork. The grievance was returned to the plaintiff, informing him that he should sign up for prompt care and also that he had filled out the form incorrectly. He had filed it as a grievance rather than as a request for a Health Services Review. The plaintiff did not appeal this decision.

Nurse Stork saw the plaintiff again on April 30, 2020. During the April 30, 2020 visit, the plaintiff complained of numbness to the distal interphalangeal joint of the index finger where he had an old fracture. He also reported an allergic skin reaction when the weather outside was humid, experiencing hives during the summer, becoming "agitated" in the hot weather, and

not being able to "tolerate the impact of the hot weather on his nerve system." Exh. C at 18-19. The plaintiff also reported chronic tinnitus and "request[ed] to use the single-cell due to his chronic ears problem. According to the inmate, he is not able to tolerate any cellie in his cell because they always use their electronic devices on very high volume sounds. These sounds aggravate his nerve system and his defense response to the loud sounds are fighting with everyone in the cell." Exh. C at 19.

Nurse Stork performed a physical examination of the plaintiff. She found that the plaintiff was "alert and oriented and in no acute distress." Exh. C at 20. Nurse Stork concluded that the plaintiff used "pressured speech with constant interruption [of] his interlocutor," and she also concluded that his judgment and insight were poor and "limited due to malingering." Exh. C at 22. She diagnosed the plaintiff as having two new problems, "malingering" and "Mallet finger , acquired." Id. The plaintiff had been taking Lyrica 75 mg and Venlafaxine 75 mg to address his chronic pain. Nurse Stork ordered the plaintiff to taper off of Lyrica over the next three months. She advised the plaintiff to take Vitamin D2 2,000 units each morning and have his Vitamin D level checked in four months. The plaintiff was directed to follow up in five months or as needed. Nurse Stork noted that orders for thoracic and

lumbar x-rays were in place in response to the plaintiff's complaint that he was suffering from scoliosis.

The assessment comments by Nurse Stork indicated "Chronic ear pain," Exh. C at 22, and she noted "Due to chronic ear pain, ENT appointment pending." Exh. C at 23.

Nurse Stork did not see the plaintiff after the April 30, 2020 appointment. Her last day working at MacDougall-Walker Correctional Institution was May 29, 2020. She was transferred to Osborn Correctional Institution at that time and continued working at Osborn until she left the Department of Correction in December, 2021.

The plaintiff was seen by the ENT on August 26, 2020 at UConn Health Center. The plaintiff reported bilateral tinnitus and intermittent otalgia (ear infection) in both ears. He "denied hearing loss otorrhea and vertigo." Exh. C at 26. An audiogram was done to evaluate the plaintiff's hearing. There were no abnormalities found with his hearing, and the ENT noted that "hearing is grossly normal in both ears" and "adequate for daily communication." Id.

At the end of the visit, the ENT concluded: "Our exam today was normal." Exh. C at 27. However, the ENT recommended a CT scan of the plaintiff's head to address his subjective complaints of hyperacusis and tinnitus. The CT scan was done at UConn Health Center on November 16, 2020 and the findings were

-10-

normal.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task

is "carefully limited to discerning whether there are any
genuine issues of material fact to be tried, not deciding them.
Its duty, in short, is confined . . . to issue-finding; it does
not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be
resolved is both genuine and related to a material fact.
Therefore, the mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment. An issue is "genuine . .
. if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson, 477 U.S. at 248
(internal quotation marks omitted). A material fact is one that
would "affect the outcome of the suit under the governing law."
Id.

When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light most
favorable to the non-movant . . . and draw all reasonable
inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d
33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v.
Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).

Because the plaintiff in this case is proceeding pro se,
the court must read the plaintiff's pleadings and other
documents liberally and construe them in a manner most favorable
to the plaintiff.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d

Cir. 1994).  Moreover, because the process of summary judgment
is "not obvious to a layman," Vital v. Interfaith Medical Ctr.,
168 F.3d 615, 620 (2d Cir. 1999), the district court must ensure
that a pro se plaintiff understands the nature, consequences,
and obligations of summary judgment. See id. at 620-621.  Thus,
the district court may itself notify the pro se plaintiff as to
the nature of summary judgment; the court may find that the
opposing party's memoranda in support of summary judgment
provide adequate notice; or the court may determine, based on
thorough review of the record, that the pro se plaintiff
understands the nature, consequences, and obligations of summary
judgment. See id.

     The court finds that the plaintiff understands the nature,
consequences, and obligations of summary judgement. First,
defendant Stork served the plaintiff with the notice to pro se
litigants required by Local Rule 56(b). Second, Stork's
memorandum states the nature and consequences of summary
judgment. Finally, the plaintiff submitted a response to the
defendant's motion that included documents that he viewed as
proving his claim.

**III. DISCUSSION**

     Defendant Stork contends that she is entitled to summary
judgment for three reasons. First, she argues that the plaintiff
has failed to exhaust available administrative remedies as

required by the Prison Litigation Reform Act, 42 U.S.C. §
1997e(a); second, she argues that the plaintiff has failed to
satisfy either the subjective prong or the objective prong of an
Eighth Amendment deliberate indifference claim; and third, she
argues that she is entitled to immunity from suit because she
was a health care provider acting in good faith while providing
health care services in support of the State of Connecticut's
COVID-19 response.

In support of his contention that he has exhausted
available administrative remedies, the plaintiff submits an
affidavit describing certain grievances, but there is no
evidence that these grievances were ever filed. However, even
assuming arguendo that the plaintiff exhausted his
administrative remedies, defendant Stork is entitled to summary
judgment because the plaintiff has failed to create a genuine
issue of material fact with respect to either the objective
prong or the subjective prong of an Eighth Amendment deliberate
indifference claim. Therefore, the court does not reach the
issue of whether defendant Stork is entitled to immunity from
suit.

"In order to establish an Eighth Amendment claim arising
out of inadequate medical care, a prisoner must prove
'deliberate indifference to [his] serious medical needs.'"
Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)(alteration

-14-

in original)(quoting Estelle v. Gamble, 429 U.S. 97, 104
(1976)). Mere negligence will not support a claim pursuant to 42
U.S.C. § 1983; "the Eighth Amendment is not a vehicle for
bringing medical malpractice claims, nor a substitute for state
tort law." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).
Mere disagreement with prison officials about what constitutes
appropriate care does not state a claim cognizable under the
Eighth Amendment. "So long as the treatment given is adequate,
the fact that a prisoner might prefer a different treatment does
not give rise to an Eighth Amendment violation." Chance v.
Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

      There are both subjective and objective components to the
deliberate indifference standard. See Hathaway v. Coughlin, 37
F.3d 63, 66 (2d Cir. 1994). Subjectively, "[i]n medical-
treatment cases not arising from emergency situations, . . . it
suffices if the plaintiff proves that the official acted with
deliberate indifference to inmate health. Deliberate
indifference is a mental state equivalent to subjective
recklessness . . . [which] requires that the charged official
act or fail to act while actually aware of a substantial risk
that serious inmate harm will result." Salahuddin v. Goord, 467
F.3d 263, 279 (2d Cir. 2006)(internal citations omitted). Thus,
"an official's failure to alleviate a significant risk that he
should have perceived but did not" does not constitute

deliberate indifference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 838
(1994). Objectively, the individual must have been "actually
deprived of adequate medical care," and "the inadequacy in
medical care [must have been] sufficiently serious." <u>Salahuddin</u>,
467 F.3d at 279-80. "The standard for Eighth Amendment
violations contemplates a condition of urgency that may result
in degeneration or extreme pain." <u>Chance</u>, 143 F.3d at 702
(internal citations and quotation marks omitted).

With respect to the subjective prong, the plaintiff has
failed to create a genuine issue as to whether defendant Stork
acted with deliberate indifference to his health. Stork saw the
plaintiff on two occasions, January 24, 2020 and April 30, 2020.
Although she entered orders on his behalf on October 23, 2019,
she did not see the plaintiff on that occasion.

On January 24, 2020, Nurse Stork saw the plaintiff at sick
call. The plaintiff had multiple complaints regarding his
health. His "chief complaint" was "irritable bowel syndrome."
Exh. C at 13. His "additional subjective [complaint]" was
"chronic nerve pain." <u>Id.</u> As discussed above, the plaintiff had
other complaints regarding his health under the category of
"history of present illness," but those did not include his
complaints of decreased hearing or earache. <u>Id.</u> Rather, those
complaints came up when Nurse Stork conducted a "review of
systems." <u>Id.</u> In addition to recording her review of the

-16-

plaintiff's "general system," Nurse Stork recorded the results
of her review of 12 other categories. Id. One of those
categories was E/N/T. She recorded the fact that the plaintiff
was complaining of decreased hearing and chronic left ear
problems, and she also recorded the fact that he denied
earaches. In addition, Nurse Stork took note of the fact that
the plaintiff had an ENT appointment pending; his request to see
a specialist had been approved on November 30, 2019. Nurse Stork
conducted a pain assessment, and the plaintiff identified two
areas in which he was experiencing pain, neither of which
involved his ears. Nurse Stork prescribed continued use of
Lyrica on a daily basis, and she had the plaintiff sign a
refusal of treatment form to discontinue the Nortriptyline. She
also scheduled an abdominal x-ray "due to abdominal pain,
cramping." Exh. C at 16. In addition, Nurse Stork gave the
plaintiff supplies for a hemoccult test.

Nothing in the record here supports an inference that Nurse
Stork was indifferent, much less deliberately indifferent, to
the plaintiff's health. Rather, the only reasonable inference is
that she listened carefully to plaintiff's complaints and
responded to each as she thought most appropriate under the
circumstances.

Nurse Stork saw the plaintiff again on April 30, 2020. This
was a follow up visit. In the overview section of the entry for

that visit, Nurse Stork listed approximately 12 problems the
plaintiff was experiencing. She recorded that he "is here today
due to his chronic pain, and request to renew his Lyrica 75mg PO
BID." Exh. C at 18. She also noted during his assessment that he
complained of numbness in his index finger and that he requested
the use of a single cell based on his chronic ear problems as
well as his inability to tolerate cellmates because they used
their electronic devices on a very high volume. Nurse Stork
diagnosed the plaintiff as having two new problems, namely
malingering and a Mallet finger. She addressed the plaintiff's
Lyrica prescription, advised him to take Vitamin D, and directed
him to follow up in five months or as needed. Nurse Stork
confirmed that orders for the x-rays were in place and that the
plaintiff's ENT appointment was still pending.

Nothing in the record here supports an inference that Nurse
Stork was deliberately indifferent to the plaintiff's health on
this day either. Assuming arguendo that Nurse Stork committed an
error in judgment in the way she decided to treat the plaintiff
on either January 24, 2020 or April 30, 2020, that would have at
most constituted negligence, not deliberate indifference.

Nor has the plaintiff created a genuine issue of material
fact with respect to the objective prong, namely as to whether
he was actually deprived of medical care and whether that
deprivation of medical care was sufficiently serious. The

-18-

plaintiff's claim that he was deprived of adequate medical care for a serious medical condition because Nurse Stork did not place him in a single cell in response to his  complaints of severe ear pain. His ear pain was not sufficiently serious to support an Eighth Amendment claim. The plaintiff was seen by specialists both before and after his sick call visits with Nurse Stork, and on neither occasion did the assessment with respect to his ears show that he had a serious medical condition. The results of the June 30, 2017 audiologist consultation showed that the plaintiff had normal middle ear function and essentially normal hearing. Furthermore, Dr. Siddons determined that there "no further audiology follow-up [was] needed," but that if the plaintiff continued to experience pain, then an ENT evaluation should be considered. Exh. C at 4. Approximately four months after his second visit with Nurse Stork, the plaintiff was seen by an ENT specialist. Another audiogram was done to evaluate the plaintiff's hearing. Not only were there no abnormalities found with respect to his hearing, but his hearing was determined to be normal. Nonetheless the ENT recommended a CT scan, which was done on November 16, 2020. The findings of the CT scan were also normal. The only evidence the plaintiff proffers is his own subjective evaluation of his medical condition, and that is not sufficient to create a genuine issue of material fact.

Moreover, there is no genuine issue with respect to the fact that the defendant was not deprived of adequate medical care in response to his complaints of ear pain. Nurse Stork thoroughly examined him both times she met with him and determined that although the plaintiff had complaints of severe pain, those complaints were unrelated to his ear problems and that his complaints of ear pain would be addressed during his appointment with the ENT specialist—as opposed to being addressed by placing the plaintiff in a single cell. The plaintiff's disagreement with the course of action taken by Nurse Stork is not sufficient to support a cognizable Eighth Amendment claim.

Consequently, the court concludes that the plaintiff has failed to create a genuine issue of material fact with respect to either prong of the deliberate indifferent standard.

**IV.  CONCLUSION**

For the reasons set forth above, Viktoriya Stork, APRN's Motion for Summary Judgment (ECF No. 38) is hereby GRANTED.

It is so ordered.

Dated this 9th day of March 2023, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
